### BURLINGTON.

An election effected at a balloting which commenced after sunset is void.

THE committee on elections, to whom was referred a petition of Joseph B. Blanchard and others, against the election of Abner Shedd, returned a member from this town, reported thereon as follows :—

" That the petitioners set forth, as the basis of their petition, that 'the poll was kept open an hour and a half after sunset.'

To support this allegation they introduced three depositions, from which the committee present the following extracts :—

[1] 65 J. H. 171, 228.

Edward Walker testified, that 'the town balloted three or four times. The last balloting, when Abner Shedd was declared to be chosen representative, was after sunset, and I should think it was as much as an hour. I think I was pretty nigh the last person who voted. I had determined not to vote, for it was so dark I could not see to read my vote. A man gave me one, and when I got to the lights I could see to read it. I think they balloted all of twice after sunset. I heard a man say they had better effect a choice before sundown, for he did not think they had a right to choose after sundown. It was Sylvanus Wood. I did not hear him or any other person object to the proceedings. For anything I saw, the meeting was carried on in a very peaceable and orderly manner.

'When I came out of the meeting it was clear at the west, and I could see stars. Daylight was not down then. I heard it observed in the meeting, but not by the selectmen, that they should keep the meeting open till midnight, unless they got a choice sooner. I think that at the last ballots, the selectmen had lamps enough to see well to do their business in sorting and counting the votes. There were three lamps on the selectmen's table. The last time there was one other in the gallery, and I saw no other one in the house. These lights did not light the whole house, but only about the table.'

William Nichols testified, that he was one of the selectmen, and presided. 'I cannot tell at what time the poll was closed, when Mr. Shedd was declared to be elected. I cannot tell whether the poll was closed before or after sunset. I did not think of the sunset law, and I did not take particular notice. We had occasion for lights in the meeting-house where the town-meeting was holden; and had them. I should think we had them for half an hour or more. Lights were brought in pretty soon after the first balloting. I cannot say how many ballotings were had after the lights were brought in, but I should say two or three. The ballots by which Mr. Shedd was chosen were deposited by candle-light. According to my recollection, it was a misty night, and when I came out of the meeting twilight had not then wholly disappeared. I do not know what time it was when I reached home.

'I perceived no dissatisfaction amongst any of the citizens at that meeting. I heard no objection of any kind urged by any one at that meeting. No motion was made to dissolve the meeting, or not to proceed any further. I think that the selectmen meant to conform to the provisions of the existing law respecting elections. The poll was kept open at the first ballot two hours. I noticed that by my watch. It was kept open on this ballot for that length of time, so that we might conform to the law, and for no other purpose. The ballots were all deposited for at least an hour before the poll was closed. I think the people then present at the meeting might deposit their votes in twenty or thirty minutes, and I don't know but it might be done sooner. The check list was used at every balloting, and the names of those who voted were checked. The poll was first opened at two o'clock in the afternoon.

'Mr. Shedd was chosen at the last balloting. I do not recollect that any person present at the meeting asked the selectmen or either of them, whether there was any time when it was important to close the poll. I heard some one say that there was a time when the poll must be closed. I heard no one ask the selectmen, whether the law prescribed a time for closing the poll, or anything of the kind. If I recollect right, Col. Winn, one of the selectmen, said we could vote till midnight. All that I heard said in relation to closing the poll, or any provision of law prescribing a time for closing the poll, was said by the selectmen.'

Silas Cutler testified that there were four ballotings, two before sundown and two after. A choice was effected on the fourth. * * * * * 'I cannot say when the poll was closed on the last balloting, but I should say between six and seven o'clock, P. M. I think it would take forty minutes for the persons present to deposit their votes, and for the selectmen to count and declare them, at each of the two last ballotings.

'The reasons I have for knowing that there were two ballotings after sundown were these. I recollect distinctly that the sun set clear that day. The morning of the day was rather cloudy, the sun came out at noon. There were some clouds in the afternoon; it was very cold that day; when we came out of the meeting in the evening it was clear, and a bright starlight.

'I say positively, on my oath, that the third balloting was commenced after sundown. I did not hear any objection made to the selectmen about the manner of proceeding, or about keeping the poll open as long as it was kept open. I heard no motion for a dissolution of the meeting, or not to proceed any further. I heard of no dissatisfaction at the time, but have heard of some since, from some of those present at the meeting, and from some who were not present. I have heard the chairman of our selectmen speak about the second meeting having been called, and say it was a doubt on his mind, whether it was lawful, and he disliked their calling another meeting. I do not mean to be understood that the chairman was dissatisfied at the meeting, or objected to the course of proceeding then had. He observed, that he was ignorant of the sunset law, and would rather have given twenty dollars than had it happened. There was dissatisfaction in town, and out of town people advised to have it looked after, as these cases would be looked after. I can't say whether there would or would not have been a petition had it not been for out of town people. I voted on the ballot when Abner Shedd was declared to be chosen representative.

'The question was asked of Col. Winn, whether it was right to keep the poll open after sunset, and he said they had a right to vote till midnight.

'It was my impression that the meeting understood from some source, that the selectmen had decided that they had a right to keep the meeting open till midnight. I heard it observed by several. My impression is, that something was said by Col. Winn, about the provisions of the sunset law not applying after the first balloting. There was some waiting after it began to grow dark, for lights, but I cannot say how long.'

The committee, in view of the above facts, arrived at the following conclusion: That the act of the town, in commencing a ballot after sunset, was a direct violation by the town of the law of the land. That, although a right to be represented is a high municipal privilege, and not to be taken away upon slight ground; still, a town violating the law has less claim to consideration. This principle was fully enforced in the year 1842, in the case of the town of Princeton, which town voted to dispense with the check list.

Wherefore the committee recommend the adoption of the following resolution :—

Resolved, That the seat of the member from Burlington be declared vacant."

A minority of the committee (Messrs. *Russell* and *Thomas*) dissented from the report in the following terms :—

" The only allegation set forth in the petition is, that the balloting at which the said Shedd was elected was had after sunset of the day of election, in violation of one of the provisions of the act of 1839, concerning elections :—

In support of this allegation, the petitioners offered to the committee the depositions of Edward Walker, William Nichols, and Silas Cutler, inhabitants and legal voters of Burlington. The respondent offered no evidence, but submitted his case on the depositions of the petitioners.

From these depositions, it appeared that the meeting, at which the sitting member was elected, was held on the 28th day of November ; that the poll was opened at two o'clock in the afternoon, and was kept open two hours, during the last of which, no votes were deposited in the ballot-box ; that on counting the votes it appeared that there was no choice ; that afterwards several unsuccessful ballotings were had ; that the last balloting, at which the sitting member was chosen, was commenced directly after sunset ; and that at each of the several ballotings the check list was used ; that no objections were made to the proceedings, no attempts made to dissolve the meeting, nor was there any evidence of a diminution of the number of ballots cast at the several ballotings ; that in fact there was a perfect acquiescence in the result, till, as appears in one of the depositions, interference was had from abroad ; and there is no charge of any fraud or unfairness on the part of the selectmen.

In view of these facts, the undersigned are constrained to dissent from the report of the majority of the committee; a report which recommends that the seat of the sitting member be declared vacated, not precisely because the poll was not closed before sunset, but because the balloting was commenced after sunset; a distinction, in the judgment of the undersigned, without any difference in law or equity.

The undersigned believe they might safely stop here, and be sustained in their judgment by the house, since the whole current of the reports on controverted elections favors the principle, that where the sense of the town is fairly expressed in the election, a failure to comply with the provisions of law is not sufficient to deprive a town of its representation; the design of these laws being solely to secure a fair expression. But there is another view which the undersigned desire to present to the house.

The right of representation in this house is a corporate right, of which the body corporate cannot be divested by any legislative enactment. It is also a corporate duty, for the non-performance of which the house may impose a fine; though it is optional with the body corporate to send, or incur the penalty. For the exercise of this right and the performance of this duty, the constitution allows to the towns a reasonable time. This time is fixed at four days. And by this, the undersigned understand four judicial days.

As the house cannot divest the towns of the right of choosing representatives, so neither can it shorten the period allowed by the constitution for its exercise. For if the legislature may say that the poll shall not be kept open after sunset, it may say it shall not be kept open after four o'clock in the afternoon, or any other hour in the day, and thus take away entirely the right of choosing, while one branch of the legislature, alone, may impose a penalty for not choosing. Without going at length into this subject, the committee submit to the house, that this is a case in which, to shorten the period allowed by the constitution for the exercise of a right, is to take that right away.

The undersigned, therefore, recommend that the petitioners against the right of Abner Shedd to a seat in this house have leave to withdraw their petition."

The house agreed to the report of the committee,[1] and thereupon,

---

[1] 65 J. H. 172, 183, 229, 258, 265, 275.

Resolved, That the seat of the member from Burlington be declared vacant.[1]

[1] The question being about to be taken upon the Burlington election, before the call was commenced, Mr. Wales, of Boston, made a question whether the member from Burlington was entitled to vote on the adoption of the resolution. Mr. Speaker decided that he was not, and read from the rules and orders of the house, the 14th rule of the 2d chapter, and certain passages from the Manual, and Hatsell's Precedents, as the grounds of his opinion. Mr. Whitmarsh, of Seekonk appealed from the decision, and the question being stated,—shall the decision of the chair stand as the decision of the house,—the appeal was laid on the table, on motion of Mr. Allen, of Northfield. The question was then taken on the resolution, that the seat of the member returned from Burlington be declared vacant (the name of the member from B. being omitted in calling the house) and was decided in the negative.